Coleman v. Hill.

## COLEMAN V. HILL.

1. SWAMP LANDS: *Conflicting entries.*

A lawful entry of swamp lands before the swamp land commissioner vested in the enterer an equitable title to the land, and an absolute right to a patent; and a subsequent sale and patent to another would be vacated by a court of equity, and the title vested in the first purchaser. No negligence or mistake on the part of the agent in permitting a second entry could affect the first purchaser's rights in equity.

2. STATUTE OF LIMITATIONS: *Adverse possession.*

The statute of limitations does not move in favor of a vendor who is under obligation to convey the legal title, until he has given his vendee notice of his intention not to convey, or done some other act indicating unequivocally that he claims or holds the land adversely. Mere possession by the vendor does not indicate a hostile intention.

3. SAME: *Equitable owner in possession.*

When the owner of the equitable title is in possession, under his contract, the statute of limitations does not run against his right to a conveyance.

APPEAL from *Clark* Circuit Court in Chancery.
Hon. H. B. STUART, Circuit Judge.

*H. H. Coleman, pro se.*

The act of Congress, approved September 15, 1851, vested in the State the swamp lands from its date. *Rose's Digest, 746; 20 Ark., 346.*

By the act of 1851 the commissioners were authorized to sell, and upon sale the title of the State passed to the purchaser. *1 b.*

A sale of the land by the land agent is no excuse for refusing to issue a patent certificate to a purchaser from the commissioners, while they were authorized to sell. (*Rose's Digest, p. 747, sec. 11.*) A land agent could not be required to issue a patent certificate except upon the surrender of the original certificate of purchase. (*Ib., 747, sec.*

*12 ; 20 Ark., 337.*) This provision accounts for the origi-
nal certificate of purchase surrendered by Newton. The
patent certificate and deed given to Newton, were author-
ized by law. Hearn's were not.

The right to a patent is treated by the Government,
when dealing with public lands, as equivalent to a patent
issued. When it issues it relates back to the inception of
the right. (*6 Wall., 402 ; Blackwell on Tax Titles, 453 ;
Caine's Rep., 62 ; Johnson's Rep., 80.*) Where one party has
acquired the legal title to which another has a better right,
a court of equity will compel him to convey. (*6 Wall., 419.*)
Payment of taxes is not a disseizin, unless there is also a
continued and open possession. *2 Greenleaf, 557, quoting
2 Greenl. Rep., 275 ; 14 Pick., 224.*

Appellant's possession has been continuous and un-
broken. (*22 Ark., 79 ; 34 Ib., 602.*) It is presumed to con-
tinue until notorious and adverse possession be taken by
appellees. (*Idem.*) If Newton's first certificate be re-
garded as an application to purchase, it comes within the
purview of *34 Ark., 334.*

*B. B. Battle* for appellee.

When the Government conveyed the land to Hearn, the
legal title vested in him, and there was nothing to be con-
veyed to Newton. (*96 U. S., 530.*) The second patent
was void. The land being wild and uncultivated, the pos-
session followed the legal title, and was in Hearn and his
grantees. (*21 Ark , 17 ; 6 Peters, 743 ; 5 Ib., 354.*) There
was nothing in the acts of Coleman and his grantor to bar
Hearn and his vendees. *3 Met. (Mass.), 125 ; Spencer (N. Y.),
487 ; 21 Cal., 453 ; 1 A. K. Marsh., 207 ; 7 Iredell, 310 ; 3
Green (Me.), 126 * p. ; 2 Johns., 280 ; 30 Cal., 408 ; 54 N. Y.,
387.*

Possession of an adjoining tract under the same deed

will not give constructive possession to the land in contro-
versy, he having acquired no title thereto, although his
title to adjoining tract be good. (*12 N. H., 9.*) Coleman
is barred by the title and acts of Hearn, and lapse of time.
*21 Ark., 17.*

1. SWAMP
LANDS:
Conflicting
entries.

COCKRILL, C. J.  In its inception this was an action of
ejectment by C. S. Hill against Coleman, for forty acres of
land.  Each party claimed title to the tract by patent from
the State, issued under the swamp land laws.  The patent
under which Hill asserted title was the older in date, but
Coleman claimed a superior equity.  It appears from the
record that his vendor, John Newton, entered the land on
the tenth of December, 1853, and received a certificate of
purchase therefor from the swamp land commissioner.
On May 29, 1855, he surrendered this certificate to the
land agent for the Washington District, in which the
lands were situated, in pursuance of the requirements of
the act of January 20, 1855, and got a patent cer-
tificate in its stead, upon which a patent issued September
7, 1855.

Hearn entered the same land on the fourteenth of Octo-
ber, 1854, received a certificate of purchase from the land
agent of the Washington District, surrendered it as New-
ton had done, and took a patent certificate in its stead, in
August 1855, and got his patent on the twenty-second of
that month.

The case was transferred to the equity docket, where
Hearn and his immediate vendee were made parties.  Cole-
man filed an answer and cross-complaint, alleging the
facts stated above, and showing a conveyance of the land
from Newton to him in 1859.  He also alleged that New-
ton entered into possession of the land at the time of his
entry in 1853, and held the same until his sale in 1859;

that he (Coleman) had maintained possession ever since, and that the possession of each was adverse to the plaintiffs. The plaintiffs, in turn, asserted adverse possession in themselves for more than seven years.

There was a decree in Hill's favor, and Coleman appealed.

Newton's original certificate of purchase is not before us, but it appears from a certified copy of entries made in the books of the swamp land office for the Washington District, that the transaction between Newton and the commissioner, in 1853, was a purchase of the land, under the act of January 6, 1851, and not an application to purchase, such as has frequently been before this court.

This was the first step taken by any one to acquire title to the land in litigation. It had been previously selected as swamp land, but had not been patented to the State. Newton's entry vested in him the equitable title to the land, and absolute right to a patent. Afterwards it could not lawfully be sold by the State to another. *Branch v. Mitchell, 24 Ark., 448; Brewer v. Hall, 36 Ark., 334.*

In speaking of the right to a patent after the issue of a certificate by the proper authority, the Supreme Court of the United States, in *Johnson v. Towsley, 13 Wall., 72,* say:

"In every such case where the land office afterwards sets aside this certificate, and grants the land thus sold to another person, it is the very essence of judicial authority to inquire whether this has been done in violation of law, and if it has, to give appropriate remedy. And so if for any other reason recognized by courts of equity as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience, and by the laws which Congress has made on the subject, it ought to go to another, 'a court of equity will,' in the language of the court in *Stark v. Storrs, 6*

*Wall.*, *402*, 'convert him into a trustee of the true owner, and compel him to convey the legal title.' In numerous cases this has been announced to be the settled doctrine of this court in reference to the action of the land officers."

Mistake of land agent no prejudice.

In this case there appears to have been no contest, or decision of the land officers as to the relative rights of the parties. We are not apprised of the real reason of the second entry, but are led to infer that it happened through the inadvertence of the land agent. No negligence or mistake on his part could affect the purchaser's rights in equity. It must be admitted that at law Hearn had the better title, but that can be of no avail to him in this proceeding, unless he has coupled with it such proof of possession of the land as to bar the equitable right by virtue of the statute of limitations.

Newton's relation to the State was that of a vendee under a contract for a conveyance, the conditions of which were fully performed by him. Equity regarded him as the absolute owner of the land, and the State as a naked trustee, having no estate, and charged with the simple duty to issue him a patent at the proper time.

2. STATUTE OF LIMITATIONS: Adverse possession.

It is familiar doctrine that the statute of limitations does not move in favor of a vendor who is under obligation to convey the legal title, until he has given his vendee notice of his intention not to convey, or done some other act indicating unequivocally that he claims or holds the lands adversely. The mere possession of the land by the vendor, it is held, does not indicate a hostile intention. *Harris v. King*, *16 Ark.*, *122*.

In this latter respect Hearn's position, after he received the patent, differed from that of his vendor, the State. The trust, such as it is, was forced upon him against his will, and his relation to the holder of the equitable title would be hostile without the specific proof of intent re-

quired in case of the vendor. Open and notorious acts of ownership of the land by him would be regarded as adverse to the interest of the equitable owner from the outset, and if continued for the statutory period, would vest a complete title in him. The intention to claim the land, however, must be manifested. In the absence of proof of dominion over the land by notorious acts of ownership or other notice to the equitable owner, there is no magic power in the dry legal title to work a change of estate in favor of its holder. *Harris v. King, 16 Ark., 122; Wood on Lim., sec. 219, n. 1, at p. 439.*

When the owner of the equitable title is in possession under his contract, the statute cannot run upon his right to a conveyance.

3. SAME: Equitable owner in possession.

Hill is not in a position under the proof disclosed here to claim anything by the statute of limitations. Neither he, nor any of his predecessors in title, have ever been in the actual possession of the land. They have paid the taxes, and Hearn went over the land once after his purchase. On the other hand, Newton, who lived on the adjoining land, and near the line of this piece at the time he entered it, built a log cabin on it in 1853 or '54, and a *possessio pedis* was maintained by him, under his purchase, until he sold to Coleman in 1859. In the meantime Coleman located his home on the section of land adjoining the tract. Newton entered, and had acquired title to the intervening lands, including the piece Newton resided on in 1853. He had actual possession for a time after his purchase, and testifies that he always claimed it, and exercised acts of dominion over it as over his adjoining lands from time to time. The lands were wild and unimproved, except five or six acres which were cleared before Newton's entry. This has been cultivated in part by Coleman at times, but for many years was not put to any use.

Coleman was not cultivating it when the suit was commenced, and his possession was not more apparent than it had previously been, but the plaintiff recognized that he was in possession by bringing an action of ejectment against him.

In the absence of proof of notorious acts of ownership by the holder of the legal title, and the proof of such acts of ownership by Coleman, we can see nothing upon which the plaintiff can base a claim of right under his plea of the statute of limitations.

The decree of the Circuit Court must be reversed, and a decree entered here in accordance with this opinion, vesting the legal title to the land in Coleman, and quieting his title thereto, and it is so ordered.