DRIVER *v.* BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT.

Opinion delivered April 19, 1902.

1.   EJECTMENT—COMPLAINT—DESCRIPTION OF LAND.—A complaint in ejectment is sufficient which describes the land as a certain parcel or strip of land 60 feet wide, running through certain lots described, "which parcel or strip of land had been used for a levee." (Page 361.)

2.   INSTRUCTION—PREJUDICE.—An instruction by the court that it is admitted that a certain levee was built by the state, and that the state's interest therein is vested in plaintiffs, is not prejudicial, though no formal admission is recited in the bill of exceptions, where defendant's answer and requests for instructions both concede that the state built the levee, and where the law provides that the state's interest therein shall vest in plaintiffs. (Page 361.)

3.   LEVEE—ADVERSE POSSESSION.—Possession by the state of a levee built by permission of the owner of the land is not adverse to such owner. (Page 362.)

4.   SAME—PRESUMPTION OF DEDICATION.—Where the state acquired possession of land from its owner for the purpose of building a levee, and paid such owner for building it, it will be presumed that the land was dedicated for levee purposes. (Page 363.)

5.   SAME—ABANDONMENT.—No abandonment of a levee by the state is shown where it is in proof that the public, ever since the levee was constructed, has, in times of high water, taken possession of the levee and repaired and strengthened it, and that those who have occupied the land have done so in subordination to this right of the public. (Page 363.)

Appeal from Mississippi Circuit Court.

FELIX G. TAYLOR, Judge.

Affirmed.

## STATEMENT BY THE COURT.

This was an action of ejectment, the complaint alleging "that defendant is now in the unlawful possession of all of that portion of the particular parts of the following lots, tracts, or parcels of land situated in the town of Osceola, in the said state of Arkansas, and county of Mississippi, described as lots Nos. 36, 37, 44 and the north half of 31, in Edrington Addition to the town of Osceola, part of the southwest fractional quarter of section 31, and known as a part of the Henry Griffin lot, and being in the Martha James Addition to said town of Osceola, and parts of the southwest fractional quarter of section 31, in township 13, range 11, the same being the lot upon which his (defendant's) residence is situated, and being in the Kiser Addition to said town of Osceola, to the extent of 60 feet in width, north and south, through said lots or parcels of land heretofore used for a levee, and has been in such unlawful possession of said land,—used as aforesaid."

The plaintiff set up ownership and the right to the possession of the lands as successor to the rights of the state, under the act of 1893 conveying to the St. Francis Levee District certain lands. Acts of 1893, p. 172. The answer of defendant denied that plaintiff was entitled to possession; denied that defendant was in unlawful possession; alleged that title was in defendant through a chain from William Bard, who entered from the United States; pleaded actual, uninterrupted, peaceable, and adverse possession for thirty-five years; denied that title or right of way was ever conveyed to the state of Arkansas, or her agents, or to plaintiffs. After all these allegations and denials, the answer affirmed "that shortly after the construction of the levee upon the lands in controversy, in 1852-5, they were abandoned by the state and her agents, without any effort or pretense to repair or keep the same up, and remained so abandoned for more than thirty-five years, and up to the present time; that, after said levees were built by the state, she ceased her care and control over the same, and left them to the care and control of local organizations to be created and maintained under statutory provisions of the legislature passed from time to time."

The cause was tried by a jury. The plaintiff showed that the original levee was built in 1852 or 1853 by William Bard, who was then in possession of the land; that the commissioner of the county contracted with Bard to build the levee on the lands sued for; that Bard was paid for building the levee by the issue to him of swamp land scrip. The plaintiff also introduced testimony tending to show that, ever since the levee was built, it had been kept up by the people to prevent overflow in times of high water. The testimony for plaintiff, while it showed that soon after the war people began to build and encroach upon the levee, yet it also showed that this was never against the right of the public to enter upon the levee and to repair and strengthen same during periods of high water. One witness testified: "When they [certain parties] began to build fences on the levee, there was a good deal of objection made by the people. I think about 1875 several parties were arrested for driving on it, and after that they quit driving and riding on the levee, and it is not done now. * * * The public has, at very high water, taken possession of the levee land in controversy, and repaired and strengthened it. The parties who have occupied the land in suit have always done so in subordination to the right and claim of the public to enter on and repair the levee during high water. There has been no adverse holding of the lands by anyone. The citizens behind the levee at least once every two or three years entered on the said lands, and repaired the levee, and used the same for levee purposes."

The defendant introduced various deeds, but did not trace his title back to Bard, who, he alleged, entered from the government. The defendant testified that he bought the land in 1887, and had occupied it ever since.

*S. S. Semmes,* and *Rose, Hemingway & Rose,* for appellant.

Description of land as a "part" of a certain tract is insufficient. 41 Ark. 495; 48 *id.* 425. The complaint does not state a cause of action, and hence cannot support a judgment. 18 Barb. 495; 40 Ind. 139; 4 H. & G. 172; 14 Gratt. 526; 37 Ind. 487; 15 Mont. 309; 111 Ala. 601; S. C. 20 So. 485; 35 Ind. 74; 92 Ind. 119; 6 Mo. 279; 33 N. J. L. 115; 9 Utah, 182; S. C. 33 Pac. 701; 44 Vt. 500; 36 W. Va. 489; S. C. 15 S. E. 214; 43 Mich. 267; S. C. 38 Am. Rep. 178; 14 Gratt. 526; 18 Wis. 447. Possession of land by permission of the owner does not set the statute

to running.  16 Ark. 122; 44 Ark. 452.  The state could have no title to the land without condemnation, dedication, or grant.  13 Ark. 199.  There could be no dedication without the consent of the owner. ˙ 16 La. Ann. 404; S. C. 79 Am. Dec. 586; 59 Ark. 26.

*J. C. Hawthorne,* for appellee.

The description is sufficient.  61 Ark. 414.  Appellant showed no title in himself, and no such state of facts as would defeat appellee's title.  That appellee had title, see: 67 Ark. 411; 48 Ark. 277.

WOOD, J., (after stating the facts.)  1.  The first contention is that the land is not sufficiently described in the complaint to make it the basis of any judgment.  While the complaint, in literary arrangement, punctuation, etc., is certainly inartistic and clumsy, we think it sufficiently shows that plaintiff is seeking the possession of a certain strip or parcel of land 60 feet wide, running north and south through certain lots (which are described), "which parcel or strip has been used for a levee."  The words "which have been used for a levee," we think, give sufficient definiteness to the description to enable one, by the aid of extraneous evidence, to readily locate the land.  *Lane* v. *Queen City Milling Company, ante, p.* 355.

It should not be an impossible, or even difficult, matter by observation to designate a strip of land 60 feet wide running north and south through certain lots named and described, and which had been used for a levee.  We apprehend that an artificial landmark like a levee along the Mississippi river would be easy to locate, especially if it had been used as a levee for more than a third of a century, as the outside proof indicates.  The complaint stated a cause of action.

2.  In an instruction given by the court on its own motion the jury are told that "it is admitted that a number of years ago there was a levee system organized in the state for the purpose of building public levees, and that levees were built, and that this levee was built under that law, and that whatever right, interest, or title the state had in this and other levees in this section of the state vested in the plaintiffs in this suit."  Counsel for appellant complain of this because they say "all the evidence is in the bill of exceptions, and there is nothing in it to indicate that the state ever owned or built the levee, or that such an admission was made."

It is true there is no such admission in the bill of exceptions stated as a matter of evidence. But the statement of the answer, set out *supra,* and requests for instructions numbered 2 and 7, made by appellant and refused by the court, show that appellant made such admissions. In appellant's request for instruction numbered 2 we find the following: "Plaintiffs claim as the successors of the state of Arkansas, which built the levee in controversy, through its board of commissioners, sometime before the war between the states, and base their claim of title upon the fact that the state of Arkansas, at the time of building said levee, took possession of the land," etc. And in the seventh request refused we find the following: "If the jury find from the evidence that for a long period, say thirty-five years, prior and up to the creation of plaintiff in 1893, the state, her agents, or successors, did nothing toward repairing and keeping up the levees built by her," etc. All this appears in the record, and shows plainly there was no issue in the court below as to the state having built the levee. Moreover, the testimony of Bowen that Bard built the levee in 1852 or 1853, under contract with, and under the direction of, the county commissioner, and that he was paid for the work by swamp land scrip, shows conclusively that Bard did not build the levee for himself, but for the state, and that it was built under the law of 1851. Acts 1850, pp. 77, 87, providing for such construction. The appellant having thus conceded that the levee was built by the state originally, the statement by the court that he also admitted "that whatever right, interest or title the state had in this and other levees in this section of the state vested in the plaintiffs" could not have prejudiced appellant, for it was but a statement of the law, whether he admitted it or not. Acts of 1893, p. 172.

3. Appellant also complains because the court on its own motion told the jury that if they found that the "levee was built by authority of the state," and was built by permission of the owner of the land, and "the state kept control of it for a period of seven years or more, then that would be what the law calls a right of way acquired by adverse possession, and that would complete the right of the levee."

As we have already shown, there was no issue in the court below as to the levee being built by the state. The record clearly shows that the defendant was not questioning the authority of the state to build the levee. The record further shows that appel-

lant conceded that Bard was the owner of the land. Appellant in his answer deraigned title through Bard. The proof showed conclusively that Bard built the levee under contract with the county commissioner, and was paid for same in swamp land warrants, which showed that the levee was built by his permission. It was unnecessary, confusing, and therefore improper to submit these undisputed matters to the jury. It was erroneous, too, to declare that, if the state obtained possession of the land, and built the levee by permission of the owner, and kept control of the same for seven years, this would give the state title to the right of way by adverse possession. Possession by permission with no adverse or hostile act would not start the statute of limitation. *Harris* v. *King,* 16 Ark. 122; *Coleman* v. *Hill,* 44 Ark. 452.

But, upon the concession made by defendant and the uncontroverted proof, we fail to see how there could have been any other finding than that the state acquired the right of way for a levee from the original owner. Therefore, the above instruction could not have prejudiced appellant.

The state built the levee, and paid Bard, the owner of the land, for building it. It expended its money, and acquired possession of the land from the owner for levee purposes. Neither Bard nor anyone under him is complaining. Under such circumstances a dedication to the state should be taken as conclusively established. The conclusion that Bard intended to donate the land to the state for levee purposes is fully warranted.

Then the only question remaining is whether or not the state had abandoned her right to the land in controversy before the passage of the act of March 29, 1893, conveying all her right or interest to the plaintiff (appellee). This question was presented to the jury in instructions numerous and voluminous. We find no reversible error in any of them, and the verdict of the jury on this point was amply sustained by the evidence. In truth, it could not have been otherwise. No statute of limitation could be pleaded against the state, and no affirmative act of abandonment by the state was shown. On the contrary, it was in proof that the public, ever since the levees were constructed, had in times of high water taken possession of the levee land, and repaired and strengthened the levees; that those who had occupied the lands had done so in subordination to this right of the public. This was undisputed.

Affirmed.