## JOHN KELLER v. JOHN POWELL ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 15, 1891—Decided April 27, 1891.
[To be reported.]

A descriptive warrant of survey, upon which part of the purchase money
has been paid, gives to the warrantee an equitable interest in the land
from its date, as well as a right of entry; wherefore, if the land be in
the adverse possession of another, the statute of limitations will run
against the warrantee from the date of the warrant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WIL-
LIAMS, JJ.

No. 98 January Term 1891, Sup. Ct.; court below, No. 114
October Term 1887, C. P.

On June 21, 1887, John Keller brought ejectment against
John Powell and William Keating for 120 perches of land in
Plymouth township.    The plaintiff's declaration was afterwards
amended so as to claim 14,948 square feet of land.    The defend-
ants pleaded not guilty, and the statute of limitations.

At the trial on October 17, 1890, the plaintiff, in support of
his claim of title, put in evidence a certified copy of a warrant
from the surveyor general's office at Harrisburg, dated June 20,
1866, and directed to John Sturdevant, Esq., surveyor for Luz-
erne county, reciting and directing as follows :

"Whereas, John Keller, of Plymouth township, county of
Luzerne, having applied for six acres and eighty perches of land
(improved), adjoining lands of Joseph and John Jaquish on
the southwest; on the east by John Gould, and lots Nos. 41
and 42, of the third division of Plymouth, northwesterly by
Kingston certified town line, and westerly by Nos. 1, 2, and 3,
lots of the mountain tier, third division of Plymouth, being part
of an original eight rods road, situate in Plymouth township,
in the county of Luzerne, for which he has paid into the office
of the state treasurer at the rate of ten pounds per one hundred
acres, interest thereon to commence from the first of January,

Statement of Facts.

1816, to be paid agreeably to the several acts of assembly in such cases made and provided:

"These are therefore to authorize and require you to survey unto the said John Keller the quantity of acres by him applied for at the place aforesaid, if not already surveyed and appropriated, and to make return thereof into the surveyor general's office, for which this shall be your warrant."

The plaintiff followed the foregoing with a survey made on June 23, 1866, in pursuance of said warrant, and returned, June 25, 1866, as containing six acres and sixty-six perches, and a patent from the commonwealth to the plaintiff for the land so surveyed, dated July 3, 1866. Having shown further that the land sued for was within the lines of the patent, and that the defendant Keating was in possession of a part of said land, and the defendant Powell in possession of the residue, the plaintiff rested his case.

The defendants, after showing color of title, made the following offer:

Defendants propose to prove by the witness on the stand, William Keating, that the premises in controversy were occupied by his father, and his father's family, from 1856 down to the present date; that the premises were fenced in from the public road during all that time by a fence which has remained and is upon the same line; and that the premises in controversy were used for the raising of crops, for grass and fruit trees growing thereon, and were part and parcel of the door yard of the house in which his father and his father's family lived.

The plaintiff objected for the reason that the testimony offered was immaterial, the law being that the statute of limitations cannot be pleaded as against the commonwealth, nor can it be pleaded as against a vendee of the commonwealth, until the inception of that vendee's title; that, thus far, as shown by the evidence, the title of John Keller did not commence and was not completed in him until the return of the survey in 1886 June 25th.

By the court: We will admit the testimony and seal a bill for the plaintiff; exception.[1]

Testimony was then given by Keating and other witnesses, tending to prove the facts stated in the offer, and to show also that the defendant Powell, and those under whom he claimed,

Charge of Court below.

had had adverse possession, for the same period, of the land occupied by him.

The testimony being closed, the court, RICE, P. J., charged the jury in part as follows:

This land lies within what is called a certified road. Whilst there has been some question raised amongst members of the profession as to whether there is any title in the commonwealth to convey in these lands, which have thus been dedicated to public uses, that question is not raised in this case.* It seems to be conceded upon both sides that on June 20, 1866, this was vacant land, and that the commonwealth had the right to grant it to persons who might apply for it. At that time, on June 20, 1866, and for many years before, it appears from the testimony, the defendants, or their predecessors under whom they claim, had been in possession of the land in controversy, and that possession has been maintained to the present time. I say, this appears from the testimony in the case; it is for you to say whether the testimony is to be believed. There is no testimony to the contrary. Where a man goes into the open, notorious, adverse and exclusive possession of land, and maintains that possession continuously and without interruption for a period of twenty-one years, he acquires a good title as

---

*It was stated in the appellant's History of the Case:

"The commissioners appointed to put in execution the act of April 4, 1799, [3 Sm. L. 362,] for offering compensation to the Pennsylvania claimants of certain lands within the seventeen townships of Luzerne county, laid out and returned in their surveys a number of certified roads, varying in width from four to eight rods, and lying between and bounding the various tiers of certified lots returned by the commissioners. These roads were laid out on the official surveys, in addition to the usual allowance of six per centum for ordinary road purposes, and in most instances have never been used as roads, because they were laid apparently with no regard to the topography of the ground, and over hills and ravines where it was impossible for roads to be built. The title remained in the commonwealth, and the unused and entirely impracticable certified roads, originally returned by the commissioners, have ever since been regarded by the commonwealth as vacant land. As the ground on which these roads were laid has gradually become of value for agricultural or mining purposes, application has been made for the same, and the commonwealth has granted title thereto to her citizens, upon warrant, survey and patent."

Charge of Court below.

against every person except the commonwealth. And if you believe the testimony in this case, the defendants had that sort of possession, and maintained it during the period which is required to give title by possession.

But it is contended upon the part of the plaintiff that the statute of limitations, which bars an action after twenty-one years, did not begin to run in this case until June 23, 1886, and that the action of ejectment having been brought on June 21, 1887, it was within the time. This is a question in the case, and it is a legal question for the court to decide. On the part of the defence, it is claimed that the statute of limitations began to run on the date of the warrant, the warrant being what is called a descriptive warrant, the date of it being June 20, 1866. And we so decide, that the statute of limitations began to run on June 20, 1866, for the reason that the warrant to John Keller being a descriptive warrant, and the purchase money having been paid, it gave him an equitable title as of that date, which he might forfeit and lose, it is true, by his negligence, but which was not forfeited in this case, because he pursued it with due diligence. Therefore, on that date he had the right of entry, namely, June 20, 1866; and, not having brought his action of ejectment within twenty-one years, he is not entitled to recover, if you believe the defendants' testimony as to their possession.

The plaintiff requests the court to charge:

1. The plaintiff in the case procured from the proper land office a descriptive warrant, covering the land involved in the case, on June 20, 1866, authorizing and directing John Sturdevant, the county surveyor of Luzerne county, to survey for him, the said plaintiff, the land set forth in said warrant; that the said surveyor, in pursuance of said warrant, thereupon surveyed the land described therein, which embraces the land in this controversy, on June 23, 1866, and made a return of the said survey to the proper office at Harrisburg, which was duly accepted and filed in the land office on June 25, 1866; that immediately thereafter, or on July 3, 1866, a patent was issued by the commonwealth to the plaintiff for the land described in the said warrant and survey, thus vesting a complete legal title to the land aforesaid in the said plaintiff.

Answer: This point is affirmed.

Arguments.

· 2. That, prior to the survey aforesaid, the plaintiff had no such title to the land in controversy as would support an action of ejectment against the defendants, who were in possession at that time, namely, June 23, 1866.

Answer : This is denied and answered in the negative.[2]

4. That, while a distinct, unbroken and adverse possession of land for a period of twenty-one years, will establish title thereto as between all other claimants of the same, it will not establish title as against the commonwealth ; and therefore, in the present case, the statute cannot avail as a defence for the defendants, because the beginning of its running, as claimed by them, took place while the commonwealth was still the owner of the land in respect to which it is pleaded.

Answer: This is answered in the negative.[3]

5. That the plaintiff, here, having had no such title to the land in controversy as would authorize and support an action of ejectment on his part against the defendants, at least until June 23, 1866, but having ,acquired on that date from the commonwealth requisite title to support ejectment, and having brought such action against the defendants within twenty-one years after such acquisition of title, his action is in time, and he is entitled to recover now all the land described in the amended description, which the jury shall find, under the evidence, to have been included in the survey aforesaid.

Answer : This point is answered in the negative.[4]

·  ·—The jury returned a verdict for the defendants.  Judgment having been entered, the plaintiff took this appeal, assigning for error :

1. The admission of defendants' offer.[1]

2–4. The refusal of plaintiff's points.[2 to 4]

*Mr. John S. Harding* (with him *Mr. Garrick M. Harding*), for the appellant :

Unless the plaintiff had the right to bring ejectment for this land on June 20, 1866, the statute of limitations cannot avail the defendants, for it is horn-book law that no title acquired subsequent to the bringing of the action would have enabled him to recover : McCulloch v. Cowher, 5 W. & S. 427 ; Wolford v. Morgenthal, 91 Pa. 30 ; and the statute of limitations could not commence to run until the plaintiff was invested with a right of action.

1. An action of ejectment instituted by the plaintiff on June 20, 1866, against the persons in possession of this land, could not have been maintained. True, the plaintiff on that date had paid to the commonwealth the amount of purchase money necessary to give life to his application for six acres and eighty perches of vacant land, and on that day there was issued at Harrisburg a warrant requiring the surveyor of Luzerne county to survey to the plaintiff the land applied for, "if not already surveyed or appropriated." That warrant granted to the county surveyor a right of entry for the specific purpose of locating the survey, but no right to use the land for any other purpose was then granted; and, if the plaintiff had then attempted to make such use of land, admittedly in the possession of others, he would have been liable for damages in trespass. As a matter of fact, the warrant, issued at Harrisburg on June 20th, could not, by any means of conveyance then possible, have gotten into the hands of the surveyor before June 21st, and the plaintiff could not have known on the 20th of the existence of even the surveyor's right of entry for the specific purpose of locating the warrant.

2. As the statute of limitations conveys no title whatever, as against the commonwealth, the beginning of the defendants' title by possession could not take place until the plaintiff had the "seisin" necessary to maintain ejectment: § 2, act of March 26, 1785, 2 Sm. L. 299. Title by possession is a purely legal title: Graffius v. Tottenham, 1 W. & S. 488; protecting the occupant, not for his own merit, but for the demerit of the owner in delaying to bring his action: Sailor v. Hertzogg, 2 Pa. 182. Yet, the demerit of this plaintiff was adjudged by the court below to consist in not bringing his action within a time during part of which he had no seisin and could know nothing more than that he had applied for a warrant to survey vacant land. Can it be presumed from the issuing of a warrant to the surveyor, descriptive of more land than was actually surveyed to the plaintiff, that he had sufficient seisin to maintain an action? No adjudicated case that we have found, has pushed the doctrine of equitable title out of the commonwealth to such an extent.

3. It is the survey returned, and not the warrant, that fixes the description of the land to which title passes; and not until

Arguments.

the survey is returned does the warrantee acquire such title as will enable him to maintain ejectment: Bell v. Levers, 3 Y. 23; McCoy v. Dickinson College, 4 S. & R. 302; Patten v. Scott, 118 Pa. 125; Strauch v. Shoemaker, 1 W. & S. 166; Ormsby v. Ihmsen, 34 Pa. 462; Roland v. Long, 13 Pa. 464; Emery v. Spencer, 23 Pa. 271; McCall v. Neely, 3 W. 69; Hunter v. Meason, 4 Y. 107; Mather v. Trinity Church, 3 S. & R. 508; Price on Lim. & Liens, 57; Sergeant's Land Law, 122, 135; Dawson v. Laughlin, 2 Y. 446; Bechtel v. Rhoads, 3 S. & R. 333; Shumway v. Phillips, 22 Pa. 151. In no case has the inception of title been held to relate back to a descriptive warrant, except to sustain the claim of the warrantee against junior warrantees, and then only when possession has been taken, or the title is perfected by survey returned and accepted. Here, the warrantee is related back against his will. In any event, the court committed a fatal error in admitting evidence of the possession of the defendants before that possession became adverse. It had not been adverse to the commonwealth: Morris v. Thomas, 5 Binn. 77; and it could not become so as to her grantee until he attempted to take possession by survey.

*Mr. H. B. Payne* (with him *Mr. William S. McLean*), for the appellees:

1. The title under a descriptive warrant duly surveyed and returned begins with the date of the warrant: Lauman v. Thomas, 4 Binn. 51; Chambers v. Mifflin, 1 P. & W. 74; Star v. Bradford, 2 P. & W. 384; Fox v. Lyon, 27 Pa. 9; Fox v. Lyon, 33 Pa. 474; Washabaugh v. Entriken, 34 Pa. 74; Hughes v. Stevens, 43 Pa. 197; McGowan v. Ahl, 53 Pa. 84; Conkling v. Westbrook, 81* Pa. 81. Upon payment of the purchase money, which always precedes the issuing of the warrant: Fox v. Lyon, 27 Pa. 9, the warrantee is immediately invested with an equitable title, upon which he can maintain ejectment, or trespass, for a wrongful entry upon the land described, made between the date of the warrant and the survey: Sergeant's Land Law, 135; Bechtel v. Rhoads, 3 S. & R. 333; Washabaugh v. Entriken, 34 Pa. 74. Indeed, an adverse possession will run against a settler from the inception of his settlement: Munshower v. Patton, 10 S. & R. 334. A fortiori, it will run against the owner of a descriptive warrant.

Opinion of the Court.

2. Adverse possession began to run against the plaintiff on June 20, 1866. The ejectment, brought on June 21, 1887, was too late, the defendants' possession having then ripened into a full legal title: Martin v. Jackson, 27 Pa. 504; Olwine v. Holman, 23 Pa. 279; Maul v. Rider, 51 Pa. 377. Moreover, the warrant and survey conveyed no title to the plaintiff, the commonwealth having none to grant. The warrant covers part of on old "Yankee" road, laid out by the Connecticut settlers, and recognized by the commissioners who surveyed their allotments and certified them to the surveyor general at Harrisburg. Such certificates called for the road as a boundary, and the title of the certificate holders extended, under a well-known rule of construction, to the middle of the road: Paul v. Carver, 24 Pa. 207; Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 127; Doveston v. Payne, 2 Sm. L. C. 232, Am. note.

PER CURIAM:

The first assignment does not conform to the Rules of Court. The remaining assignments present a single question of law, viz., when does title begin under a descriptive warrant duly surveyed and returned? The appellant contends that it commences with the date of the return of the survey; the appellees contend that it begins with the date of the warrant.

This, as before observed, was a descriptive warrant; its boundaries are fully set forth therein. A descriptive warrant gives a right of entry: Bechtel v. Rhoads, 3 S. & R. 333. The warrantee has an equitable title, commencing with the date of the warrant. His title bears a close analogy to that of a vendee under articles of agreement. A descriptive warrant, and payment of part of the purchase money, gives an equitable interest in the land from its date, which can only be divested by conveyance or twenty-one years' adverse possession: Washabaugh v. Entriken, 34 Pa. 74. When the patent issues, the warrantee becomes possessed of the full legal title, and it relates back to the inception of his equitable title. We are of opinion the statute runs from the date of the warrant.

Judgment affirmed.