HIBBEN *v.* MALONE.

Opinion delivered April 6, 1908.

1. SWAMP LAND GRANT—CONSTRUCTION.—The act of Congress of September 28, 1850, granting to Arkansas the swamp and overflowed lands within her limits, operated as a grant *in praesenti,* and passed the equitable title to the State. (Page 587.)

2. SAME—WHEN TITLE PASSES.—Where the State sold swamp land and issued a certificate of purchase therefor to the purchaser, before a patent was issued to the State, the certificate passed to him the State's equitable title, and the State, upon the issuance of such patent, became a naked trustee of the legal title. (Page 587.)

3. SAME—WHEN STATUTE OF LIMITATIONS BEGINS TO RUN.—Where the right to a deed from the State is complete in a purchaser of swamp land, the statute of limitations begins to run in favor of one in adverse possession of such land. (Page 588.)

4. STATUTE OF LIMITATIONS—IGNORANCE AS DEFENSE.—Mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations unless there has been fraudulent concealment on the part of those invoking the benefit of the statute. (Page 589.)

Appeal from Conway Chancery Court; *Jeremiah G. Wallace,* Chancellor; affirmed.

*Sellers & Sellers,* for appellants.

1. When James G. Hibben in 1854 paid the State for this land, the title was still in the general government, and it was still unconfirmed and unpatented at the time of his death. He acquired only a mere right to receive the State's patent upon complying with the law after the State acquired title. The legal title never passed from the State until December 27, 1905. 27 Ark. 200.

2. No right of action accrued until duplicate certificate was issued. There is no proof nor presumption that James G. Hibben was ousted of possession before his death; but if he was he could not have maintained ejectment, and no rights could have accrued by adverse possession. Kirby's Digest, § 2741; Gould's Digest, chapter 101, § 37; *Id.* § 34 *et seq.*

There could be no adverse possession while the title remains in the State. 51 Ark. 33; 132 U. S. 239, 33 L. Ed. 327; 81 Pac. 1064; 16 Ohio 34; 6 S. W. 83; 38 Pac. 834; 42 Pac. 738; 11 Kan. 324; 92 U. S. 343; 27 Pac. 299; 7 Wend. 125; 6 Ohio 367; 38 Pac. 401; 16 Ala. 246; 6 Ga. 159; 116 Ala. 400; 45 Cal. 50; 27 Ala. 418, syl.; 80 Fed. 458; 12 Nev. 108; 47 Cal. 570; 12 Ill. 417.

3. The statute of limitation did not begin to run until appellants knew their rights. 64 Ark. 165; 71 Ark. 382; 166 Pa. St. 536; 89 Pac. 317; 95 S. W. 55; 17 Ala. 557.

4. There is no proof that any assignment or transfer of any kind was ever made to Bost, nor that he was ever in possession of the land, and no transfer to him will be presumed; and without proof that he was ever in possession of the land no presumption will arise that he had a right to make a deed from the mere fact that he did make one. 22 Am. & Eng. Enc. of L. (2 Ed.), 1289; 6 Johns. (N. Y.), 133; 57 N. J. L. 647; 78 Pa. St. 271; 27 Mo. 48; 75 Mo. 269; 3 N. H. 340; 48 Pa. St. 187; 2 M. & W. 749; 4 Enc. of Ev. 219, 221; 4 Wigmore on Ev. § 2522.

*Charles C. Reid,* for appellee.

1. Every circumstance surrounding the transaction is consistent with the assignment of the certificate of purchase by Hibben. There are strong reasons of public policy why a grant should be presumed. 22 Am. & Eng. Enc. of L. § § 1288-9; 4 Wigmore on Ev. § 2522 and note; 159 U. S. 452; 120 U. S. 534; 2 Wharton on Ev. § § 1347-1352; 4 How. (U. S.) 289; 6 Pet. 499; 1 Wash. (U. S.) 70; 56 Ind. 311; 13 Ill. 33; 22 Am & Eng. Enc. of L. 1290; 32 Ala. 75; 27 Mo. 579; 91 N. C. 331.

2. The certificate issued to Hibben was not an application to purchase, but a certificate of purchase for cash upon which, or a duplicate thereof, he was entitled to a deed. "Whatever title the State had to the land at the time he purchased passed to and vested in him. If at the time he purchased all or any of the land had not been confirmed to the State, he was entitled to the benefit of any subsequent confirmation that might be made." 20 Ark. 347; 23 Ark. 720; *Id.* 653; Act January 6, 1851, § § 3, 8; act January 12, 1853, § § 11, 12. The plea of limitation was available. Appellants' ignorance of any cause of action can not be considered in determining when the statute begins. 58 Ark. 84; 66 Ark. 452; 68 Ark. 449; 19 Am. & Eng. Enc. of L. 189. Hibben upon his purchase for cash became the absolute owner of the land, and the State was a mere naked trustee charged with the duty to issue the patent, without power to convey a valid title to any other person. He could have maintained ejectment for it at any time, and he could sell it. 22 Ark. 553; 44 Ark. 452; 40 Ark. 328; 31

Ark. 426; 20 Ark. 337; 27 Ark. 151; 16 Ark. 9; 31 Ark. 279; 36 Ark. 472. The question of limitations is to be determined by the State statutes. *Supra;* 127 U. S. 338; 1 Wood on Lim. (2 Ed.), 11; 38 Ala. 600.

McCULLOCH, J. Appellants, who were plaintiffs below, claim title to the land in controversy under a purchase by their father, J. G. Hibben, from the State as swamp and overflowed land. The land was granted to the State under the act of Congress approved September 28, 1850, and was patented to the State in 1859. J. G. Hibben purchased the land from the State in 1857, and received a certificate of his purchase, which was proved to have been lost, and on December 27, 1905, the Commissioner of State Lands issued a duplicate thereof to appellants as heirs at law of J. G. Hibben, and on the same day conveyed the land to them by proper deed.

Appellee claims title to the land by adverse possession since 1865 under color of title.

Did the statute of limitations run before the legal title passed from the State under the deed executed by the Commissioner of State Lands to appellants?

The act of Congress operated as a grant *in praesenti,* and passed the equitable title to the State of Arkansas. *Kelly* v. *Cotton Belt Lumber Co.,* 74 Ark. 400; *Chism* v. *Price,* 54 Ark. 251; *Fletcher* v. *Pool,* 20 Ark. 100; *United States* v. *Montana Lumber & Mfg. Co.,* 196 U. S. 573.

The purchase by appellant's ancestor and the issuance to him of the certificate likewise passed to him the equitable title. *Rozell* v. *Chicago Mill & L. Co.,* 76 Ark. 525; *Coleman* v. *Hill,* 44 Ark. 452; *Hempstead* v. *Underhill,* 20 Ark. 337.

In *Coleman* v. *Hill, supra,* the court said, of the rights of the holder of a certificate of purchase of swamp land, that his relation to the State "was that of a vendee under a contract for a conveyance, the conditions of which were fully performed. Equity regarded him as the absolute owner of the land, and the State as a naked trustee, having no estate, and charged with the simple duty to issue him a patent at the proper time."

It will therefore be seen that the equitable title was in appellants, though the legal title remained in the State until both

were united in appellant by the State's deed executed on December 27, 1905.

The statute, of course, runs against the holder of an equitable, as well as against the holder of the legal, title. It is not essential that, before the statute can bar a cause of action, the title must be such as would support an action in ejectment. So it is unimportant to inquire whether or not the certificate of purchase operated as a "patent certificate" within the meaning of the statute authorizing the maintenance upon such certificate of action for the recovery of land. Act April 10, 1857, Kirby's Digest, § 2741. The term "patent certificate" seems to have been intended to refer solely to those issued after the confirmation of the grant to the State by the general government. *Hempstead* v. *Underhill, supra;* act January 20, 1855. But in the case herein cited it has been held by this court that a certificate of purchase issued before confirmation of the grant to the State passed the State's equitable title to the purchaser, the same as the patent certificate issued after confirmation. The statute does not run while the title remains in the State; but this exception does not cover a case where the bare legal title remains in the State after the equitable title has passed to the vendee.

In *Nichols* v. *Council,* 51 Ark. 26, Chief Justice COCKRILL, speaking for the court, said: "If the statute can run at all before the patent issues, it would be only in a case where the right to the patent has been completed by the performance of every act going to the foundation of the right. In such cases it has been held by the Supreme Court of the United States that the land is segregated from the public domain; that it becomes private property and consequently the subject of sale for taxes. *Witherspoon* v. *Duncan,* 4 Wall. 210; *Railway Co.* v. *McShane,* 22 *Id.* 444; *Van Brocklin* v. *Tennessee,* 117 U. S. 151. The same reasoning, it would seem, would give operation to the statute of limitation."

In the case at bar the right to a patent was complete, and it was the duty of the proper officer of the State to issue it upon demand of Hibben's heirs at any time after confirmation of the grant to the State. This is what was done. The Commissioner of State Lands, upon proof of loss of the original

certificate, issued a duplicate certificate, and the same day issued a patent. The statute of limitations, therefore, commenced from the date of the completed right to a patent, which was at the time of the confirmation to the State in 1859—or rather from the time adverse possession began after the right to a patent became complete. *Packard* v. *Moss,* 68 Cal. 123.

Ignorance of appellants as to their right in the land is urged against the application of the statute of limitation. Mere ignorance of the existence of a cause of action does not prevent the running of the statute unless there has been fraudulent concealment on the part of those invoking the benefit of the statute.

Affirmed.