(No. 5801. July 2, 1932.)

STINER HELLERUD, OLE SUNDBY and A. R. SWENSON, as Trustees of, and for and on Behalf of, the NORWEGIAN-LUTHERAN CHURCH OF PARK, IDAHO, Respondents, v. A. M. HAUCK, Appellant.

[13 Pac. (2d) 1099.]

Latham D. Moore, for Appellant.

A. L. Morgan, for Respondents.

VARIAN, J.—Plaintiffs sue on behalf of the Norwegian-Lutheran Church of Park, Idaho, an unincorporated religious association, hereinafter called "the church," to quiet title to a tract of land, approximately one acre in area, situate in the "extreme Northwest corner of the Northeast quarter of the Northwest quarter of Section sixteen in Township thirty-nine, North of Range one, West of the Boise Meridian, in Latah County, Idaho, together with a church building located thereon." The complaint alleged the erection of a church and the fencing of the said claimed tract, the continuous use of said building, and the open, notorious and uninterrupted adverse use of said premises for more than five years. The answer generally denied these allegations and set up title by purchase from the state of Idaho at public auction; that the sale was made June 22, 1917, and the deed to him issued on April 18, 1927; and prayed that the title be quieted in him. The trial judge found for plaintiffs, and from a decree quieting title in said association defendant appeals.

The testimony shows that after the church building was completed a fence was built around the premises which was later renewed; that members of the congregation had various controversies with appellant, who was formerly a member of the church, over the location of the fence, which was repaired, moved and later torn down (by appellant). In addition to the land in controversy here the association occupies a tract of one acre, in an adjoining forty-acre tract, used as a burial ground. There were negotiations between the representatives of the church and appellant with a view to settling their differences out of court, none of which came to anything definite. Appellant, upon making his

purchase from the state, went into, and continued in possession, farming and improving the land and paying all taxes levied or assessed against it.

The rights claimed by respondents are based on the provisions of C. S., sec. 6596, reading:

"Action to Recover Realty. No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the property in question within five years before the commencement of the action; and this section includes possessory rights to lands and mining claims."

C. S., sec. 6602, reading:

"Possession Under Oral Claim of Title. Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

And C. S., sec. 6603, reading:

"Same: What Constitutes Possession: Payment of Taxes. For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved. *Provided, however,* That in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

The general rule is to the effect that in the absence of a statute making the state subject to the statute

of limitations no title by adverse possession can be acquired against the state. (2 C. J. 213; 1 R. C. L. 734.) C. S., sec. 6595, is to the effect that the state cannot sue for the recovery of land after the same has been held for a period of ten years. There are exceptions to the rule applying the adverse possession statutes to state lands, as where the land has been actually reserved for, or dedicated to some public use. (*Robinson v. Lemp,* 29 Ida. 661, 161 Pac. 1024; *Richert v. City of San Diego,* 109 Cal. 548, 293 Pac. 673; 2 Tiffany on Real Property, 2d ed., p. 1975, sec. 510.) And where the state land is school land, as in the case at bar (see Idaho Admission Bill, 26 U. S. Stat. L. Sess. 1, chap. 656, p. 215, sec. 4), and the act granting said lands to the state prescribes a minimum amount per acre at which they may be disposed of by the state (Idaho Admission Bill, *supra,* sec. 11), under constitutional restrictions such as ours, providing: "That no school lands shall. be sold for less than ten dollars per acre. No law shall ever be passed by the legislature granting any privileges to persons who may have settled upon any such public lands, subsequent to the survey thereof by the general government, by which the amount to be derived by the sale, *or other disposition of such lands, shall be diminished, directly or indirectly.*" (Italics ours.) (Const., art. 9, sec. 8), state adverse possession statutes do not apply. Title to school grant lands cannot be acquired as against the state no matter how long they have been adversely occupied. (*Van Wagoner v. Whitmore,* 58 Utah, 418, 199 Pac. 670; *Murtaugh v. Chicago, M. & St. P. Ry. Co.,* 102 Minn. 52, 120 Am. St. 609, 112 N. W. 860; *O'Brien v. Wilson,* 51 Wash. 52, 97 Pac. 1115; *Newton v. Weiler,* 87 Mont. 164, 286 Pac. 133, 136; *State v. City of Seattle,* 57 Wash. 602, 107 Pac. 827, 27 L. R. A., N. S., 1188.)

 The statute begins to run against a grantee of the state only from the time when he acquires title, and any occupancy prior to that time will not be deemed adverse and cannot be the basis of title by adverse possession against a grantee of the state. (2 C. J. 216; 2 Tiffany on Real

Property, 2d ed., p. 1975, sec. 510.) The cases are not in accord as to when one acquires title from the state, and so puts the statute of limitations in motion. (2 C. J. 216.) One line of cases holds that the statute does not commence to run until issuance of patent. (*Swift v. Doe,* 162 Ala. 147, 50 So. 123; *Stringfellow v. Tennessee Coal, I. & Ry. Co.,* 117 Ala. 250, 22 So. 997; *Anzar v. Miller,* 90 Cal. 342, 27 Pac. 299.) Other cases hold that the time begins to run from the moment the grantee has an equitable interest in the land, i. e., from the date of his certificate of purchase from the state. (*School Dist. No. 109 v. Hefta,* 35 N. D. 637, 160 N. W. 1005; *Keller v. Powell,* 142 Pa. 96, 21 Atl. 796; *Munshower v. Patton,* 10 Serg. & R. (Pa.) 334, 13 Am. Dec. 678; *Whitaker v. McCarty,* (Tex. Com. App.) 221 S. W. 945.) The third rule, which we deem supported by the better reasoning, is to the effect that the actual issuance of the patent or deed is not necessary to start the running of the statute against a purchaser of lands from the state; that it begins to run when the full equitable title rests in the grantee and all that remains to be done is to transfer the legal title. (2 C. J. 218; *Hibben v. Malone,* 85 Ark. 584, 109 S. W. 1008; *Hamilton v. Flournoy,* 44 Or. 97, 74 Pac. 483.)

The testimony shows that the church building was commenced in 1906 and completed in 1907, the church members furnishing and delivering the logs of which it was constructed. When the building was commenced the following statute was in force:

"All persons using or occupying any State land without a lease, and all persons who shall use or occupy State lands for more than thirty days after the cancellation or expiration of a lease, shall be regarded as trespassers, and upon conviction shall be fined in a sum of not less than twenty-five (25) nor more than one hundred (100) dollars, and in case of a lessee, the sureties on his bond shall be liable for all damages sustained by the State by reason thereof. All suits under this section shall be instituted by the Attorney

General in the name of the State.'' (Sess. Laws 1905, p. 142, sec. 27.)

By Sess. Laws 1911, chap. 195, p. 653, the act was amended to read as follows:

''All persons using or occupying any State land without a lease from the State, and all persons who shall use or occupy State lands for more than thirty (30) days after the cancellation or expiration of a lease, shall be regarded as trespassers, and upon conviction, shall be fined in a sum of not less than Twenty-five Dollars ($25) nor more than Five Hundred Dollars ($500) or shall be punished by imprisonment in the county. jail for a term of not to exceed six (6) months, or by both such fine and imprisonment. Any criminal suit under this act may be instituted by any person against any trespasser, and regardless of the fact whether or not the said land is under lease to any person other than the trespasser, and in case of a lessee, the sureties on his bond shall be liable to a civil suit for all damages sustained by the State by reason of the trespass. All suits for civil damages against any trespasser, whatever, shall be instituted by the Attorney General in the name of the State, and may be brought when the said State has an equitable title in said land.''

By Sess. Laws 1927, chap. 66, p. 82, the act was amended by striking the last sentence of the amended act of 1911, and inserting. the following:

'' . . . . Any suit for civil damages against a trespasser, may be instituted by the attorney general in the name of the state, or in the event the land trespassed upon is leased, such suit for civil damages may be brought by the lessee in his own name. Provided, further, it shall be the duty of the prosecuting attorney to commence and prosecute all criminal actions under this section, arising in his county.''

Under these statutes the church's occupancy of the land, prior to full payment of the purchase price by Hauck, was unlawful and punishable as a criminal offense. The foundation of its claim of title, to wit, five years' continuous possession, is based, in part at least, upon a posses-

sion denounced as criminal under this statute. The church was not in possession under any lease or contract with the state. After the issuance of a certificate of sale to Hauck, the state was still the holder of the legal title while Hauck acquired an equitable interest in the land dependent upon his making complete payment therefor. (*Clark v. Board of Commrs. of Cimarron County*, 143 Okl. 18, 285 Pac. 127.) He had merely a contract to purchase the land from its owner and until full payment of the purchase price "had merely a contingent possibility of becoming owner at some future time, upon his performance of certain acts." Even his right to purchase was not absolute since any other purchaser from the state might contest his right, nor is a certificate of sale itself a "bar to inquiry as to the rights of the person" to whom issued. Prior to final payment of the purchase price the purchaser from the state cannot sell the land. "He can sell or assign only the certificate of purchase, and the right acquired thereunder." (*Directors of Fallbrook Irr. Dist. v. Abila*, 106 Cal. 355, 39 Pac. 794; see 50 C. J. 987, sec. 235.) The case therefore comes within the rule announced by this court many times to the effect that rights based upon violations of law will never be enforced by the courts. (*Libby v. Pelham*, 30 Ida. 614, 621, 166 Pac. 575; *McFall v. Arkoosh*, 37 Ida. 243, 215 Pac. 978, which involve rights under contracts made in violation of law.) In the recent case of *Clark v. Utah Construction Co.*, 51 Ida. 587, 8 Pac. (2d) 454, this court approved the rule that such illegality need not be pleaded, but when it appears the court will, *sua sponte,* decline to grant relief, and that the test is, does the plaintiff require the aid of the illegal transaction to sustain his case; if he does his claim cannot be enforced in law. The rule likewise applies to suits in equity as well as to suits at law. (6 R. C. L. 816.)

*Clark v. Utah Construction Co., supra,* was a case involving damages for trespass by sheep upon lands in the possession of plaintiff's wife, who assigned the cause of action to him. It developed from the evidence that plain-

tiff was a county commissioner of Owyhee county and as such had signed the deed conveying the premises involved from the county to his wife. This was held to be violative of the statutes prohibiting a member of such board from being interested in the purchase or sale of property belonging to the county (C. S., sec. 3515), and making a violation thereof a felony (C. S., sec. 8122), and that plaintiff's deed was void "because the act of issuing it operates in violation of a positive statute and of the public policy of the state."

In construing C. S., sec. 2912, as first enacted in 1905, this court held that where, in order to initiate the right to appropriate public waters at a point upon land belonging to the state, it was necessary for the applicant to enter thereon to make the necessary examination, maps, surveys, etc., to properly prepare his application, etc., an entry on state lands for the purpose of making an appropriation, without the right to make such entry, either by purchase or condemnation proceedings, would be a trespass under said section; therefore the entry was void and the water permit issued thereon of no effect. (*Tobey v. Bridgewood*, 22 Ida. 566, 127 Pac. 178.)

In the instant case the church is not relying upon any lease, deed or other writing upon which it bases ownership or right to possession of the acre tract. During all the time the church occupied the said tract, from 1906 until Hauck's purchase was consummated in 1927, its occupancy thereof was illegal, and constituted a crime under said statute. No rights could be acquired against the state's grantee based upon such occupancy during the time the title thereto remained in the state. The record fails to show any contest or delay as to the issuance of the state's deed to Hauck, and while the record is silent as to when he made final payment under his contract and so became entitled to a deed, it may be presumed that the deed issued promptly to him on payment of the final instalment of the purchase price, and that April 18, 1927, was the earliest date from which the statute would begin to run and adverse possession

initiate. This action was commenced March 13, 1931. The statutory time of five years not having elapsed since adverse possession could have initiated, the church is not entitled to maintain this action. It is therefore unnecessary to consider other questions raised by this appeal. The decree is reversed and cause remanded, with directions to make findings and decree in favor of appellant.

It appearing from the records of this court that appellant failed to file his brief within the time limit specified by Rule 43, no costs will be allowed; each party to pay their own costs.

Lee, C. J., and Budge, Givens and Leeper, JJ., concur.

Petition for rehearing denied.