Gordon COOK, Plaintiff and Appellant,

v.

Kenneth CLARK and Evelyn S. Huffman, Defendants and Appellees.

Civ. No. 10923.

Supreme Court of North Dakota.

Oct. 1, 1985.

---

Fleming and DuBois, Cavalier, for plaintiff and appellant; argued by Neil W. Fleming.

McConn, Fisher & Thune, Grand Forks, for defendants and appellees; argued by Robert L. McConn.

MESCHKE, Justice.

We consider whether the doctrine of acquiescence may be applied to determine boundaries of "original grant" school lands held by patent from the State of North Dakota less than 20 years, although purchased from the State by contract for deed more than 20 years prior to this action. The trial court held acquiescence cannot apply, relying on a statute which says that such lands "which have been sold on contract shall retain their character as such grant lands until the contract has been paid up and a patent issued therefor." § 15–06–01, N.D.C.C. We hold that the time period for adverse possession or acquiescence[1] may commence to run against a

purchaser of original grant lands anytime after the contract for sale is entered into, where the action to establish acquiescence comes after the contract for deed is fully paid. Accordingly, we reverse.

Plaintiff Gordon Cook owns the south half of the northwest quarter, the west half of the northeast quarter, and the southeast quarter of section 11 through State patents issued in 1967 and 1970, which were preceded by contracts for deed with the State in 1952 and 1953.

Defendant Evelyn S. Huffman holds fee title to the adjacent southwest quarter of section 11 through a State patent issued in 1971, which was preceded by a contract for deed with the State in 1952. Defendant Kenneth Clark is purchasing the southwest quarter from Huffman by contract for deed. For brevity only, we refer to both defendants as "Clark."

The underlying factual dispute is outlined by Cook's amended complaint which asserts that his boundaries have been fenced for more than 20 years, which established his boundaries by acquiescence, but that Clark has removed the fence on the north part of his southwest quarter and that Clark wants the fence on the east part of his quarter moved east to the quarterline. Clark's answer and counterclaim maintains that the quarterlines, not the fencelines, are the true boundaries, so that Cook is encroaching on the southwest quarter.

The trial court entered partial summary judgment, holding as a matter of law that acquiescence was not available to Cook, because none of the lands had been patented for 20 years or more. The trial court reserved determination of factual issues of survey and damages, but determined under Rule 54(b), N.D.R.Civ.P., that there was no just reason for delay in entry of the partial judgment.

---

**1.** The doctrine of acquiescence developed in response to the harshness of strict adherence to the doctrine of adverse possession which requires the person claiming title to intend to occupy the disputed territory even though he knows the land is not his. *Production Credit*

*Association of Mandan v. Terra Vallee,* 303 N.W.2d 79 (N.D.1981). Essentially, acquiescence is a doctrine of repose for well-established boundaries after long inaction. 12 Am. Jur.2d, *Boundaries,* § 85 (1964).

The sole issue on appeal is whether or not, under any circumstances, the 20 year period of possession necessary to establish ownership under the doctrine of acquiescence can start to run before a patent is issued on original grant lands.

Following through on a condition for receiving certain grants of land from the United States upon admission into the union (13 N.D.C.C., The Enabling Act, §§ 10 and 11, pp. 68–69), North Dakota, like many other western and midwestern states, provided in its state constitution that it would hold those lands in trust for educational purposes and that those lands would be sold only at public sale, with the proceeds going to a school trust fund. This "trust" element caused most states to hold that title to school grant lands can never be acquired by adverse possession as against a state. See, e.g., Murtaugh v. Chicago, M. & St. P. Ry. Co., 102 Minn. 52, 112 N.W. 860 (1907). But, where a state's interest is not affected, the decisions held that the time period for adverse possession could start against the purchaser of state lands when the purchaser had full equitable title and all that remained was to transfer the actual legal title. See, e.g., Hibben v. Malone, 85 Ark. 584, 109 S.W. 1008 (1908); Hellerud v. Hauck, 52 Idaho 226, 13 P.2d 1099 (1932).

The general rule is that title to land held by a state in any capacity cannot be obtained by adverse possession or prescription. On the other hand, this protection of the public interest from adverse effects of long inaction is not always extended to the private interests of purchasers of public lands. At least some jurisdictions hold that a prospective patentee by purchase contract has an equitable title that will permit adverse possession to commence against him even before a patent issues. Annot., 55 A.L.R.2d 554, 585 (1957).

An early North Dakota case held that upon approval of a contract for sale of school land by the board of university and school lands, the purchaser received immediate possession and obtained sufficient title to enable him to transfer and encumber his interest, subject only to payment of the balance due on the contract. School District No. 109 of Walsh County v. Hefta, 35 N.D. 637, 160 N.W. 1005 (1917). According to Hefta, a purchase of school lands by contract was essentially equivalent to a deed subject to payment of a mortgage, and therefore the purchaser had a title subject to taxation and to adverse possession. Hefta held that the title of a contract purchaser was subject to the statute of limitations and to adverse possession in an action commenced shortly after the State patent was issued.

When Hefta, supra, was decided, neither the state constitution nor state statutes defined the term "original grant lands." In 1943, the state legislature enacted § 15–0601, R.C. (1943), which defined original grant lands:

"The term 'original grant lands' shall mean all of the public lands which heretofore have been or hereafter may be granted to the state by the United States for the support and maintenance of the common schools or for the support and maintenance of the university, the school of mines, the state training school, the agricultural college, the school for the deaf and dumb, any normal school, or any other educational, penal, or charitable institution, and any lands which have been obtained by the state through a trade of any such lands for other lands. Original grant lands which have been sold on contract shall retain their character as such grant lands until the contract has been paid up and a patent issued therefor." (emphasis supplied.)

That section, now § 15–06–01, N.D.C.C., has undergone only very minor changes since 1943.

Clark maintains that the last sentence of § 15–06–01 was inserted as a direct response to the Hefta decision and means that the limitation period for adverse possession or acquiescence can only begin to run, regardless of the situation, when a patent has been issued. To support his position, Clark relies on the Code Reviser's

Note to § 15–0601, R.C. (1943), which reads in its entirety:

"This section is based on ss. 153, 159 of the N.D. Const., and is recommended to clarify this chapter. The legislative assembly has distinguished between original grant lands and nongrant lands in the acts relating to the sale of lands under the control of the board of university and school lands. This chapter deals exclusively with the sale of original grant lands, and this definition includes all original grant lands as defined in the constitution and in the decisions of the courts of this state. Another chapter in this title deals with the sale of nongrant lands and a definition is supplied in that chapter defining nongrant lands as all lands under the control of the board of university and school lands except those defined in this section."

We do not agree with Clark's interpretation of the Code Reviser's Note or with the application of the last sentence of § 15–06–01, N.D.C.C. to the situation presented here. We believe that the new section was intended only as a clarification and not as a change of law. The Code Reviser's Note says only that the new section was "to clarify." It does not specifically refer to the *Hefta* decision or single out its holding.

The distinction between original grant lands and nongrant lands was evidently made in order to clearly separate procedures and allocation of funds. *See* Code Reviser's Note to Chapter 15–06. It is clear that the last sentence means only that original grant lands sold on contract retain their character as grant lands for purposes of assuring full proceeds to the school trust fund. It is the public interest in assuring payment to the trust fund that is protected. No intention to benefit private property interests is apparent.

The underlying purpose of the restrictions on sale of school grant lands is to ensure that the land or the proceeds from the sale of the land constitute a trust fund to be used for educational purposes. While allowing someone to establish adverse possession or acquiescence against the State

itself would impinge upon that trust, we observe that where the purchaser of grant lands has made timely payments, the State's interest is adequately protected. There is no compelling reason why a contract purchaser should be allowed to insulate himself from his own inaction simply because he is buying from the State. A contract purchaser is not insulated from the effects of his own inaction when he purchases from a private party. Of course, until a purchase contract with the State is fully paid, a title by adverse possession or acquiescence cannot be acquired and confirmed against a contract purchaser because he may default on the contract and the equitable interest will revert to the State.

 We hold that enactment of § 15–06–01, N.D.C.C. and its predecessor, § 15–0601, R.C. (1943), did not overrule the decision in *School District No. 109 of Walsh County v. Hefta,* 35 N.D. 637, 160 N.W. 1005 (1917). The rationale of *Hefta,* distinguishing between public property and private property interests as they may be affected by inaction, is as valid today as it was in 1917. We therefore hold that the time period for acquiescence can commence to run against a purchaser of original grant lands when the contract for sale is entered into, where the action to establish acquiescence comes after the contract for deed is fully paid.

Since the trial court did not reach the factual issues of whether or not acquiescence was established in this case, we reverse the partial summary judgment and remand for trial.

LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

I respectfully dissent.

Once it is conceded, as it is in the majority opinion, that title to school grant lands never can be acquired by adverse possession as against the State, the language of Section 15–06–01, N.D.C.C., stating that original grant lands which have been sold on contract "shall retain their character as

such grant lands until the contract has been paid up and a patent issued therefor," precludes the result reached by the majority opinion. The majority opinion labors mightily to reach a conclusion that the language does not mean what it says and that the purpose of its enactment was not to overcome the decision in *School District No. 109 of Walsh County v. Hefta,* 35 N.D. 637, 160 N.W. 1005 (1917).[1] But that is exactly the effect of that language. When the wording of a statute is free and clear of all ambiguity, we do not disregard the letter of the statute under the pretext of pursuing its spirit. Section 1–02–05, N.D. C.C. See, e.g., *Quist v. Best Western Intern., Inc.,* 354 N.W.2d 656 (N.D.1984).

Furthermore, if we were to conclude that the statute is ambiguous and therefore subject to construction, the construction placed upon it by the majority appears to be unduly restrictive and without factual basis. Although the interpretation placed upon the statute by the majority opinion may permit a more equitable result than adherence to the language of the statute would allow, that equitable result is one which should be sought by legislative action rather than by judicial gloss.

Finally, many of the cases of other jurisdictions involving this issue, including those cited in the majority opinion, do not involve statutes such as Section 15–06–01, N.D.C.C. Rather, they are concerned with the distinction between bare legal title, which remains in the State until the patent is issued, and equitable title, which vests in the purchaser. But that is exactly the subject of the last sentence of Section 15–06–01, N.D.C.C., when it states that the lands sold on contract "retain their *character*" as grant lands until the contract is paid up and the patent is issued.

In *Hellerud v. Hauck,* 52 Idaho 226, 13 P.2d 1099 (1932), referred to but apparently not relied upon in the majority opinion, the Idaho court, while stating the better-rea-soned rule is that the actual issuance of the patent or deed is not necessary to start the running of the adverse-possession statute against a purchaser of lands from the State, and that it begins to run when the full equitable title rests in the grantee and all that remains to be done is to transfer the legal title, did not apply that rule in that case. Another Idaho statute made it a crime to use or occupy State lands without a lease from the State, and in *Hellerud* the party claiming the land by adverse possession had no lease from the State. Therefore, the Idaho court refused to enforce a right based upon a violation of the law. Similar provisions prohibiting trespass on lands subject to the control of the Board of University and School Lands are found in Sections 15–08–20 through 15–08–24, N.D. C.C.

The Idaho court further held that the illegality of the adverse possession need not be pleaded but when it appears the court will sua sponte decline to grant relief. The Idaho court indicated that the test is whether or not the party claiming title by adverse possession requires the aid of an illegal transaction to sustain his case. If he does, the claim will not be enforced in a suit in equity or at law.

Although the significance of the North Dakota statutes prohibiting trespass on lands controlled by the Board of University and School Lands was neither briefed nor argued, they only reaffirm my reading of Section 15–06–01, N.D.C.C.

I would affirm the judgment of the district court.

ERICKSTAD, C.J., concurs.

---

**1.** Interestingly enough, despite the fact that there were constitutional provisions involving these lands not only in North Dakota but also in other western and midwestern States, the opinion in *Hefta* cites absolutely no authority—no constitutional provision, statute, case, treatise, nor encyclopedia—in support of its conclusion.