## Commonwealth, Department of Environmental Protection v. Espy

*Dennis Whitaker, Margaret O. Murphy, Martha Smith, Laurie Shepler* and *Jason Oyler,* for Commonwealth.

*Stanley Stein,* for co-plaintiff Bright.

*Scott Gill,* for defendant Espy.

*Charles Bierbach* and *Thomas Reed,* for defendants Beaver, Hidden Hollow Enterprises Inc., Legacy Conservation Group LLC, Angling Fantasies LLC and Bellwood Antis Enterprises Inc.

KURTZ, *J.,* June 13, 2007—This case is before the court on defendants' motion for post-trial relief.[1] The motion was filed in response to the decision of the court filed January 29, 2007, concerning the navigability of the Little Juniata River in Huntingdon County, Pennsylvania. In the decision, we made 174 findings of fact concerning the Little Juniata River, discussed the applicable principles of law on the subject of navigability and reached the following conclusions of law:

"(1) In 1803, when the Commonwealth granted to Joseph Heister the three tracts of land that are owned today by Rural Partners, the grant was subject to the 1794 Act of Assembly that declared the Little Juniata River to be a public highway.

"(2) Therefore, Mr. Heister's property extended only to the low watermark of the Little Juniata River.

"(3) By virtue of the public highway declaration, the Commonwealth of Pennsylvania retained ownership of the streambed adjacent to the land granted to Mr. Heister, and its ownership continues to today.

"(4) The Little Juniata River during the period following the Revolutionary War until the advent of the Pennsylvania Railroad was navigable-in-fact."

Defendants disagree with all of the conclusions.

## DISCUSSION

Initially, defendants challenge the first three conclusions on the ground that it was error to "declare the Act

---

1. Pa.R.C.P. 227.1.

of 1794 as removing the equitable property interest established as early as August 1, 1766." The argument is a rehearsal of defendants' position at trial.

The factual foundation for the conclusions was not in dispute at trial; indeed, it was stipulated. Findings of fact 93, 94, 95 and 105-120 set forth the events that led to the conclusions. Nonetheless, succinct summarization is warranted.

Title to the real estate that is owned today by defendants passed from the Commonwealth into private ownership in 1803 when three patents were delivered to Joseph Heister. Nine years earlier, on February 5, 1794, the Pennsylvania Legislature had declared the Little Juniata River in Huntingdon County to be a public highway. The river flows past the defendants' property.

The conclusion of this court was that since the Pennsylvania Legislature declared the Little Juniata River to be a public highway nine years before the grant of the land, the riparian rights of the original patentee, Joseph Heister, were effected in that he acquired title only to the low watermark of the river. In this regard, we relied on the decision of the Pennsylvania Supreme Court in *Leaf v. Pennsylvania Co.,* 268 Pa. 579, 112 A. 243 (1920).

Defendants protest and claim that equitable title passed from the Commonwealth prior to passage of the public highway declaration. On this point, the facts are these:

(1) Mr. Heister in 1803 obtained from the Pennsylvania Land Office patents (deeds) for three adjacent properties that bordered the Little Juniata River in Huntingdon County.

(2) As to one of these properties (85 acres), a Peter Young applied for a warrant on August 1, 1767. The land was surveyed for Mr. Young October 20, 1767. Mr. Young did nothing more with respect to this property.

(3) As to the second of the three properties, an Abraham Sells obtained a warrant for 25 acres on February 22, 1785. This land was surveyed May 28, 1791. As to this parcel, Mr. Sells did nothing more.

(4) Finally, as for the third property, again Abraham Sells obtained of warrant for 100 acres on June 7, 1792. This land was not surveyed until October 30, 1798. Alike his first warrant, Mr. Sells did not return the survey to the land office.

Defendants rely on *Keller v. Powell,* 142 Pa. 96, 21 A. 796 (1891), in support of their argument. The decision is quite short and is set forth below:

"Per Curiam.

"The first assignment does not conform to the rules of court. The remaining assignments present a single question of law, viz., when does title begin under a descriptive warrant duly surveyed and returned? The appellant contends that it commences with the date of the return of the survey; the appellees contend that it begins with the date of the warrant. Its boundaries are fully set forth therein. A descriptive warrant gives a right of entry. *Bechtel v. Rhoads,* 3 Serg. & R. 333. The warrantee has an equitable title, commencing with the date of the warrant. His title bears a close analogy to that of a vendee under articles of agreement. A descriptive warrant, and payment of part of the purchase money, gives an equitable interest in the land from its date, which can only be divested by

conveyance of 21 years' adverse possession. *Washabaugh v. Entriken,* 34 Pa. St. 74. When the patent issues, the warrantee becomes possessed of the full legal title, and it relates back to the inception of his equitable title. We are of opinion the statute runs from the date of the warrant. Judgment affirmed."

This decision provides no factual basis and does not address the issue of delay in the process of land acquisition. In 1854, the Pennsylvania Supreme Court focused on that issue in the case of *Emery v. Spencer,* 23 Pa. 271 (1854), and opined as follows:

"When it is said that a precisely descriptive warrant gives title from its date, and a vague one from the time of survey, the qualification is sometimes added and always to be understood, *if it be followed up with reasonable diligence.* Whether descriptive or vague, the warrant imposes on the holder the duty of having it surveyed and returned into the survey-general's office in a reasonable time, and his supineness is punished by postponing him to a more diligent, though subsequent claimant. How long he may lie by and delay his survey, or, having made it, delay procuring return of it, has not been distinctly settled, unless *Strauch v. Shoemaker,* 1 W. & Ser. 173, be regarded as fixing the rule; but since the case of *Star v. Bradford,* 2 Penna. R. 397, a delay for seven years has been accounted ground of a legal presumption of abandonment. Ordinarily, abandonment involves a question of intention, and is for the jury on all the circumstances; but where it depends on *lapse of time,* and there are no repelling circumstances in proof, it becomes, after seven years, a conclusion of law, to be declared by the court." (emphasis in original)

This decision we believe, compels the conclusion that as a matter of law Abraham Sells and Peter Young abandoned any interest they had in the real estate. Defendants' argument that equitable title passed prior to the passage of the public highway declaration is therefore baseless.

The conclusion that the Little Juniata River is navigable-in-fact is also assailed on the ground that this court failed to follow the "accepted test in the United States for a determination of navigability-in-fact." On this issue, defendants point to the decisions of the United States Supreme Court in *United States v. State of Utah,* 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931), and, *United States v. Rio Grande Dam and Irrigation Company,* 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899).

We agree with defendants' position that the standard in Pennsylvania for a determination of navigability is the federal test announced in *The Daniel Ball,* 77 U.S. 577 (1870). In our initial opinion, we said that the Pennsylvania Supreme Court adopted that test in *Cleveland & Pittsburgh Railroad Co. v. Pittsburgh Coal Co.,* 317 Pa. 395, 397, 176 A. 7, 9 (1935). See p. 51 of opinion.

But, in this case, it is the application of the test that has separated the parties. On the one hand, plaintiffs have characterized as substantial and overwhelming the evidence of the commercial use of the Little Juniata River in the first two decades of the nineteenth century. Defendants, on the other hand, have marginalized the same evidence and argued that "the river was used for purposes of infrequent commerce, . . . ." A quotation from the decision of the United States Supreme Court in *Rio*

*Grande Dam and Irrigation* is set forth in defendants' motion and reflects their view of early nineteenth century commercial activity on the Little Juniata River, and suggests their notion of an appropriate application of *The Daniel Ball* test to the evidence in this case.

The seminal decision of the United States Supreme Court on the question of determining navigability is *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). According to the United States Court of Appeals for the Second Circuit, the United States Supreme Court in *Appalachian Electric* held that a stream is navigable if "(1) it presently is being used or is suitable for use, or (2) it has been used or was suitable for use in the past, or (3) it could be made suitable for use in the future by reasonable improvements." *Rochester Gas and Electric Corp. v. F.P.C.,* 344 F.2d 594, 596 (2d Cir. 1965). See also, *Pennsylvania Environmental Council Inc. v. Bartlett,* 315 F. Supp. 238 (M.D. Pa. 1970).

In *Appalachian Electric,* the issue was the navigability of the New River which flows through Virginia and West Virginia. The United States District Court for the Western District of Virginia in a comprehensive opinion concluded the river was not navigable. See 23 F. Supp. 83 (1938). The United States Court of Appeals for the Fourth Circuit in an equally comprehensive opinion affirmed the district court. 107 F.2d 769 (1939). The United States Supreme Court in an opinion authored by the late Justice Stanley Reed reversed.

The opinion of Mr. Justice Reed is significant for several reasons.

First, he rejected the idea that the test of navigability is a one size fits all formula. He wrote that "[T]he legal concept of navigability embraces both public and private interests. *It is not to be determined by a formula which fits every type of stream under all circumstances and at all times." Id.* at p. 404. (emphasis added)

Next, he framed the issue in the case as follows:

"The navigability of the New River is, of course, a factual question but to call it a fact cannot obscure the diverse elements that enter, into the application of the legal tests as to navigability. We are dealing here with the sovereign powers of the Union, the Nation's right that its waterways be utilized for the interests of the commerce of the whole country. It is obvious that the uses to which the streams may be *put vary from the carriage of ocean liners to the floating out of logs, that the density of traffic varies equally widely from the busy harbors of the seacoast to the sparsely settled regions of the Western mountains. The tests as to navigability must take these variations into consideration." Id.* at pp. 405, 406. (footnotes omitted) (emphasis added)

The Justice indicated that *The Daniel Ball* definition of navigability was "the basic concept" but also noted that "[E]ach application of this test, however, is apt to uncover variations and refinements which require further elaboration." *Id.* at p. 406. He set forth the test:

"Those rivers must be regarded as public navigable rivers in law which are navigable-in-fact. And they are navigable-in-fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may

be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the states, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water." *Id.* at p. 406.

Mr. Justice Reed then parsed the test of navigability, and it is clear beyond peradventure from the explication of certain phrases in the test that the court strongly endorsed an expansive rather than a restrictive approach to determining navigability.

Thus, with respect to the phrase "susceptible of being used, in their ordinary condition," the court held that "[A] waterway, otherwise suitable for navigation, is not barred from that classification merely because artificial aids must make the highway suitable for use before commercial navigation may be undertaken." *Id.* at p. 407.

Justice Reed also addressed the question of the volume of commercial traffic—the hub of defendants' argument. He wrote:

"Nor is it necessary for navigability that the use should be continuous. The character of the region, its products and the difficulties or dangers of the navigation influence the regularity and extent of the use. *Small traffic compared to the available commerce of the region is sufficient. Even absence of use over long periods of years, because of changed conditions, the coming of the rail-*

*road or improved highways does not affect the navigability* of rivers in the constitutional sense. It is well recognized too that the navigability may be of a substantial part only of the waterway in question. Of course, these evidences of nonnavigability in whole or in part are to be appraised in totality to determine the effect of all." *Id.* at pp. 409, 410. (footnotes omitted) (emphasis added)

Mr. Justice then proceeded to a factual analysis of the case. From our perspective, his assessment of the evidence presented on the question of the navigability of the 59-mile stretch of the New River between Radford, Virginia, and Wiley Falls, Virginia, is most relevant since it is clear to us at least that the quantum of evidence which Justice Reed found sufficient to find the river navigable is far less than the evidentiary presentation made by the plaintiffs in this case. Also, with respect to the volume of evidence necessary to support a finding of navigability, Justice Reed found support for his opinion in the decision of the United States Court of Appeals for the Seventh Circuit in *Economy Light & Power Co. v. United States,* 256 F. 792, 797, 798, *affirmed,* 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1919). In *Economy Light,* the issue was navigability of the DesPlaines River which flows from Wisconsin to the Kankakee River in Illinois. Justice Reed observed:

*"Use of a stream long abandoned by water commerce is difficult to prove by abundant evidence.* Fourteen authenticated instances of use in a century and a half by explorers and trappers, coupled with general historical references to the river as a water route for the early fur traders and their supplies in pirogues and Durham or

flat-bottomed craft similar to the keelboats of the New, sufficed upon that phase in the case of the DesPlaines. Nor is lack of commercial traffic a bar to a conclusion of navigability where personal or private use by boats demonstrates the availability of the stream for the simpler types of commercial navigation." *Id.* at p. 416. (footnotes omitted) (emphasis added)

In this case, the evidence presented satisfied us that for a brief period in the history of Huntingdon County, the Little Juniata River was used commercially by the residents of the Juniata Valley. Indeed, until the opening of the Pennsylvania Canal in the 1830s and the construction of the Pennsylvania Railroad in 1850, the river was the only means residents had to ship their excess commerce east to market. Traffic on the Little Juniata was certainly not as heavy as it was on the so-called Great Rivers since the population of the Juniata Valley was relatively small. But, there is no doubt that the river was a highway for commerce, and therefore was navigable-in-fact.

For these reasons, the post-verdict motion of defendants will be denied.

## ORDER

And now, June 13, 2007, for the reasons set forth in a memorandum filed this date, it is the order of this court that defendants' motion for post-trial relief is denied.

It is the further order of this court that:

(1) The declaratory relief sought by plaintiffs is granted. This court hereby declares that the Little Juni-

ata River is navigable-in-fact such that the title of all riparian landowners of property along the river extends only to the ordinary low watermark with a public easement between the ordinary high and low watermarks, that the lands below the ordinary low watermark are submerged lands owned by the Commonwealth and held in trust for the public, and that the public has the right of use and enjoyment of the Little Juniata River, including the right to fish, boat, wade and recreate there.

(2) The court further declares that the 1.3-mile stretch of the Little Juniata River from its confluence with Spruce Creek downstream is navigable-at-law and that the 1803 grant of land to Joseph Heister by the Commonwealth was subject to the February 4, 1794, public highway declaration.

(3) As stipulated by the Commonwealth agencies and defendants in this matter, the following persons and entities, their agents and employees and persons acting in future concert with them are subject to the injunctive relief entered through this order (collectively, "stipulated defendants"): Connie Espy (if Mrs. Espy then still owns an interest in the Espy property); Bellwood Antis Enterprises (BAE) (if BAE then still holds an interest in the Espy property); Donald L. Beaver Jr., individually and in his capacity as: (i) the managing member of Pamdon (the managing member of Spring Ridge Club LLC, formerly Legacy Conservation Group LLC), and, (ii) the majority stockholder and chief executive officer of Hidden Hollow Enterprises Inc.; Spring Ridge Club LLC (formerly Legacy Conservation Group LLC); Cold Currents LLC (general partner of Rural Conservation Partners LP); and Rural Conservation Partners LP. Allen

Bright, plaintiff in civil action no. 2003-1297, which was consolidated with this action for purposes of discovery and the adjudication of issues relating to the navigability of the Little Juniata River is not a party to the stipulation.

(4) Stipulated defendants are permanently enjoined from interfering with the public's rights in the Little Juniata River, including the posting and/or hanging of signs, advertising the Little Juniata River as private waters, and threatening, harassing and otherwise attempting to exclude the public from fishing, boating, wading and/or recreating on and in the Little Juniata River and the submerged lands owned by the Commonwealth.

(5) A navigation servitude exists in favor of the public on all rivers and streams all or partly in the Commonwealth regardless of whether or not the bed of the river is owned by the Commonwealth. Stipulated defendants are permanently enjoined from interfering with the navigation servitude in the Little Juniata River, including the posting and/or hanging of signs, advertising the Little Juniata River as private waters, and threatening, harassing and otherwise attempting to exclude the public from boating in the Little Juniata River.

(6) Stipulated defendants are permanently enjoined from violating the Dam Safety and Encroachments Act, Section 514 of the Administrative Code and the regulations promulgated at 25 Pa. Code chapter 105, including the hanging of cables and signs over and across the Little Juniata River in the vicinity of the river's confluence with Spruce Creek and 1.3 miles further downstream. Stipulated defendants are permanently enjoined

from hanging cables and signs over and across the Little Juniata River without necessary permits, approvals and submerged lands licenses.

(7) Stipulated defendants are permanently enjoined from violating the Fish and Boat Code, including interference with members of the public who are engaged in lawful fishing and boating activities on or in the Little Juniata River.

(8) Stipulated defendants are permanently enjoined and restrained from interfering with or excluding members of the public, including advertising the Little Juniata as private waters, who are engaged in lawful activities on or in the Little Juniata River and the submerged lands owned by the Commonwealth.